[Cite as *A.R.C. v. D.J.S.*, 2020-Ohio-5403.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [A.R.C.], | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 19AP-807 |
| v. | : | (C.P.C. No. 17DR-2908) |
| [D.J.S.], | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 24, 2020

**On brief:** [*D.J.S.*], pro se. **Argued:** [*D.J.S.*].

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

NELSON, J.

{¶ 1} Father D.J.S. appeals from the judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, that adopted a magistrate's decision denying his motion to modify the court's visitation order. We affirm.

{¶ 2} Mother A.R.C. filed a complaint for divorce on August 3, 2017. The trial court entered a decree of divorce on November 28, 2017, designating A.R.C. as "the residential parent and sole legal custodian" of the parties' minor son. Decree at 4. Regarding parenting time, the decree stated: "Father shall have supervised parenting time with the minor child as the parties shall agree, in writing, but if [the] parties cannot agree to supervised parenting time, then Father shall not have any Court ordered parenting time until requested upon proper Motion filed with this Court." *Id.*

{¶ 3} D.J.S. filed a motion to modify parenting time on February 20, 2018, stating that he had missed the hearing due to a hospitalization and that he was "requesting

unsupervised visitation, every other weekend from Friday at 7:00 p.m. until Sunday afternoon. I am flexible and it doesn't have to be written in stone. I would also like to have parenting time on holidays for half of the day. I think that it is fair and reasonable that we split the holidays."

{¶ 4} On May 10, 2018, the magistrate addressed the motion with the following order: "Visitation, supervised, through Buckeye Boys Ranch, drug screening after series of supervised visits before any change in visitation. The first month it will be one visit every two weeks for two hours. Then if goes well, add every week for two hours."

{¶ 5} D.J.S. filed a motion for contempt on January 11, 2019, alleging the following "interference with parenting time" as outlined in the May 10, 2018 order: "[A.R.C.] [h]asn't shown up for visitation 3 times in [the] last six months."

{¶ 6} On May 14, 2019, the magistrate held a hearing on D.J.S.'s motion and on a motion A.R.C. had filed alleging that D.J.S. was in contempt of a child support order. The magistrate's decision stated that D.J.S. "provided testimony that he was unsure of specific days of supervised visitation missed" as alleged in the motion. A.R.C. testified that she did not bring the child due to illness, as was the policy of the visitation center, "and could provide a doctor excuse for any missed visits." July 1, 2019 Magistrate's Decision at 5. The magistrate concluded that D.J.S. had "failed to establish, by clear and convincing evidence, that [A.R.C.] is in contempt of the court orders regarding parenting time orders," and denied the motion. *Id.* at 5-6.

{¶ 7} In a separate decision entered the same day, the magistrate returned to D.J.S.'s original February 20, 2018 motion to modify visitation. The magistrate noted that the parties' child had been "born premature and addicted," and that D.J.S. had "voluntarily checked himself" into a psychiatric facility when his son was released from the hospital. July 1, 2019 Magistrate's Decision at 3-4. D.J.S. "has had very little contact" with the child since his birth and was not "involved in the Neglect Abuse Dependency case filed shortly" thereafter. *Id.* at 4. D.J.S. "never completed his part of the case plan" that FCCS implemented requiring him "to take parenting classes and obtain domestic violence counseling." *Id.* The magistrate noted D.J.S.'s "history of mental health issues including polysubstance abuse"; although D.J.S. "testified that he had been clean for two years," he "then testified that he currently had marijuana in his system" and had had alcohol five or

six weeks earlier. *Id.* at 5. D.J.S. had two convictions for domestic violence against A.R.C., both before their son's birth. *Id.* D.J.S. also was convicted for violating the civil protection order imposed after the domestic violence convictions. *Id.* He had convictions, too, resulting in prison or jail time for DUI, felonious assault, and improper discharge of a firearm. *Id.*

{¶ 8} The magistrate noted that D.J.S. was "not employed," but why was "unclear." *Id.* at 6. "He testified that mainly he is so busy with all his appointments and long bus trips to and from appointments [that] he doesn't have time to work or be a reliable employee. He has daily counseling sessions, including chemical dependency, AA and NA. * * * He testified that he does anger management weekly and attends a program for ADD issues." *Id.* The magistrate also heard testimony from the guardian ad litem, who recommended that D.J.S. "continue to have supervised parenting time by an independent agency." *Id.*

{¶ 9} The magistrate accepted this recommendation when granting D.J.S.'s original February 20, 2018 motion to modify visitation and modifying the original visitation order as follows: "[D.J.S.] shall have two hours of visitation every week which shall be supervised by an independent agency. * * * [D.J.S.]'s parenting time shall remain supervised until he completes the following: 1. Parenting classes * * *. 2. Completion of D/V/anger management classes * * *. 3. Six consecutive months of clean 10 panel drug screens scheduled randomly * * *. 4. Upon completion of six consecutive months of clean bi-monthly ten panel drug screens and no missed screens, defendant shall not be required to take additional drug screens as a condition of his ongoing supervised parenting time. After successful completion of the four above requirements and consistent visitation by [D.J.S.] during the period of supervised visitation, the parties may agree to expand [his] parenting time and remove the supervision requirement" upon approval of the court. *Id.* at 8-9. In addition, the trial court ordered "a temporary deviation in the monthly child support obligation" so that D.J.S. could have "sufficient funds to comply with the cost of visitation supervision" and drug screening. *Id.* at 9.

{¶ 10} D.J.S. filed another motion for change of visitation on October 16, 2019. In support of the motion, he stated that he had graduated from a parenting program, and he requested a change that might grant him visitation "weekends and holidays." Oct. 15, 2019 Motion at 2.

{¶ 11} In a decision adopted by the trial court and entered on November 21, 2019, the magistrate noted that A.R.C. and D.J.S. had appeared at a hearing on the motion, and that "[a]n audio recording was made of the proceedings." After recounting the existing terms of the visitation order, the magistrate stated: "[D.J.S.] indicated that he did not understand the prior orders of the court and had not completed or brought proof of compliance with the provisions set forth in the order. Until [D.J.S.] demonstrates compliance with these provisions and can demonstrate that he has addressed the issues identified in the prior decision and entry, inclusive of mental health concerns, filing for unsupervised visitation with this very young child is premature." Nov. 21, 2019 Magistrate's Decision at 3.

{¶ 12} In his sole assignment of error appealing this decision, D.J.S. asserts that "[t]he trial court erred in ordering supervised visitation." Appellant's Brief at 2. In support, he argues that: he has "done supervised visits with outstanding reviews"; "[t]here are no places to accommodate the 2nd order which has already been fulfilled"; and he has "[c]ompleted other concerns of the court thr[ough] affordable possibilities already." He states: "As I win motions I receive less supervised time even. All I want is unsupervised visits with my son," adding that he has had "[n]o opportunity to show completion of court ordered programs." *Id.* D.J.S. also argues that "[a]ll" of the contempt motions he filed "were overlooked and not addressed" by the trial court. *Id.*

{¶ 13} The record lacks a transcript of the November 19, 2019 hearing, and we can review the trial court's ruling only for plain error. *First*, D.J.S. did not timely object in the trial court to the magistrate's decision. "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Juv.R. 40(D)(3)(b)(iv); *compare* Civ.R. 53(D)(3)(b)(iv) (same import); *Longmire v. Danaci*, 10th Dist. No. 19AP-770, 2020-Ohio-3704, ¶ 22 (waiver of right to challenge findings). *Second,* and again apart from plain error, "[a]bsent a transcript, this court must presume the regularity of the proceedings below and affirm the trial court's decision." *Lee v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 06AP-625, 2006-Ohio-6658, ¶ 10. *See also Studley v. Biehl*, 10th Dist. No. 18AP-11, 2018-Ohio-2274,

¶ 14 (reviewing appeal for plain error in the absence of a transcript; "we cannot presume evidence other than what appears in the record, nor can we presume evidence not offered or facts not proved. Without a transcript, we must presume the regularity of the trial court's proceedings and affirm its judgment on appellate review").

{¶ 14} Under Appellate Rule 9(B)(1), "it is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record, however those proceedings were recorded, are transcribed in a form that meets the specifications of App. R. 9(B)(6)" pertaining to transcripts. "The transcription of any necessary proceedings is, therefore, required, and an appellant may not rely solely on an audio-recording for purposes of his or her appeal." *State v. Tinley*, 9th Dist. No. 17CA0062-M, 2018-Ohio-2239, ¶ 6 (holding that certain assignments of error could not be resolved "on their merits in the absence of a trial transcript. The audio-recording contained in the record does not comport with App.R. 9 and is not a substitute for a proper transcript"). *See also In re Adoption of Z.A.-O.J.*, 5th Dist. No. 16-CA-05, 2016-Ohio-3159, ¶ 15 ("Though the file contained an audio recording of the adoption hearing, it is clear from the Staff Notes to App.R. 9 that while a trial court may choose to record the proceedings through the use of an audio-recording device, 'regardless of the method of recording the proceedings, a transcript is required for the record on appeal' "). Furthermore, the record does not contain any exhibits entered into evidence at the hearing to support D.J.S.'s assertions that he fulfilled the conditions of the visitation order.

{¶ 15} We also find no plain error in the trial court's denial of D.J.S.'s October 16, 2019 motion for change of visitation. By his own admission, D.J.S. has only partly complied with the conditions for modification set forth in the trial court's July 1, 2019 order that are a prerequisite to unsupervised visitation. No appeal was taken from that order arguing that the trial court erred in placing those conditions or in properly applying the statutory factors for modification of an existing visitation order. *See* R.C. 3109.051(D) (listing factors); *see also Braatz v. Braatz*, 85 Ohio St.3d 40, 44 (1999) (holding that "modification of visitation rights is governed by R.C. 3109.051" and that "the trial court shall consider the fifteen factors enumerated therein, and in its sound discretion determine visitation that is in the best interest of the child").

{¶ 16} Finally, we note that D.J.S.'s assertion that the trial court failed to address his motions to modify visitation is not supported by the record. His February 20, 2018 motion was addressed by the trial court's May 10, 2018 order and ruled on in the July 1, 2019 magistrate's decision. The January 11, 2019 motion for contempt was denied on July 1, 2019. His October 16, 2019 motion was denied on November 21, 2019 and is the subject of this appeal. No unresolved motion to modify visitation appears in the record as of the date on which D.J.S. filed his notice of appeal.

{¶ 17} The assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

KLATT and BEATTY BLUNT, JJ., concur.

_____